IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03218-REB-MJW

METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,

Plaintiff(s),

v.

RAYMOND CULLEN, Individually and as Parent and Legal Guardian of B.C., a Minor, and
SUSAN THOMPSON,

Defendant(s).

---

**ORDER REGARDING**
**DEFENDANT RAYMOND CULLEN'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM TO ADD EXEMPLARY DAMAGES (DOCKET NO. 58)**

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter is before the court on Defendant Raymond Cullen's Motion for Leave to Amend Counterclaim to Add Exemplary Damages (docket no. 58). The court has reviewed the subject motion (docket no. 58) and the Plaintiff's response (docket no. 64). In addition, the court has taken judicial notice of the court's file and has considered applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and order.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The court finds:

1. That I have jurisdiction over the subject matter and over the parties to this lawsuit;

2. That venue is proper in the state and District of Colorado;

3. That each party has been given a fair and adequate opportunity to be heard;

4. That Defendant Raymond Cullen seeks to add a counterclaim for Exemplary damages;

5. That this case arises out of a personal injury lawsuit filed against Defendant Raymond Cullen wherein it was alleged that Susan Thompson was injured by a go kart driven by the minor eight year old son of Mr. Cullen;

6. That a claim of exemplary damage may be allowed by amendment where the "plaintiff establishes prima facie proof of a triable issue." See §13-21-102(1.5)(a), C.R.S. Prima facie evidence is evidence which is sufficient to establish a fact unless it is rebutted. Peiker Acustic, Inc. v. Kennedy, 2011 WL 2550478, at *1 (D. Colo. June 27, 2011). "The question of whether the evidence is sufficient to support an award of exemplary damages is one of law; whether such damages are ultimately awarded is one for the tier of fact." Pizza v. Wolf Creek Ski Dev. Corp., 711 P.2d 671, 684 (Colo. 1985).

Exemplary damages require parties to establish the requisite attendant circumstances beyond a reasonable doubt. Id.; §13-25-127(2), C.R.S. The exemplary damages statute defines "willful and

wanton" for purposes of determining exemplary damages as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b), C.R.S. As defined by the Court of Appeals, "[w]illful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others. Such conduct extends beyond mere unreasonableness." U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp., 192 P.3d 543, 549 (Colo. Ct. App. 2008). This standard has been interpreted as justifying exemplary damages when the act causing the injury was performed with an evil intent, and with the purpose of injuring the Plaintiff, or with such a wanton and reckless disregard of his rights as evidence of a wrongful motive. Western Fire Truck, Inc. v. Emergency One, Inc., 134 P.3d 570, 578 (Colo. App. 2006). The sufficiency of the evidence to justify an award of exemplary damages is a matter of law for the court's determination. Id.;

7. That Plaintiff's argument relies primarily upon the "Complaint Rule" which provides that the duty to defend inquiry is made by looking to the four corners of the underlying complaint and comparing the complaint to the policy. Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294, 299 (Colo. 2003). In essence, Plaintiff

argues that it looked at the policy in question and compared it to the four corners of the First Amended Complaint and Second Amended Complaint and determined that there was no coverage based upon Exclusions 8. B, C, and D in the subject policy since paragraph No. 15 in the First Amended Complaint and paragraph No. 16 in the Second Amended Complaint alleged **"Upon information and belief, Defendants Raymond Cullen and Blaine Cullen owned the kart."** Plaintiff also looked at the exceptions to the Exclusions and determined there was still no coverage. Moreover, Plaintiff argues that it checked to see if this go-kart accident would be covered under Mr. Cullen's Metropolitan homeowner's policy or under his umbrella policy that was in place at that time and determined it was not covered under either of their polices. Accordingly, Plaintiff denied a defense in the underlying personal injury lawsuit listed above for over a year. Lastly, Plaintiff argues that it was not until the Third Amended Complaint was filed in the underlying personal injury lawsuit listed above that they become aware that Raymond Cullen and Blaine Cullen were not the owners of the go-kart. Thus, Plaintiff argues they never acted in bad faith and that their actions doe not rise to the level of willful or wanton conduct;

8. That Defendant Cullen argues that this court should permit him to

bring a claim for exemplary damages against Plaintiff under the facts and circumstances of this case. In particular, Defendant Cullen argues that the "Complaint Rule" that Plaintiff relies upon was never intended to permit insurers to avoid their obligations to their insureds, and it was never intended to shield an insurer to avoid its duty to defend. See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 828 (Colo. 2004); Apartment Inv. & Mgmt. Co., (AIMCO) v. Nutmeg Ins. Co., 593 F.3d 1188, 1194 (10th Cir. 2010). In support of this position, Defendant Cullen relies upon the interview conducted by Plaintiff's investigator. It his interview, Mr. Cullen told the investigator information about the ownership of the go-kart. In particular, Mr. Cullen told the investigator that (1) he had only made a down payment on the go-kart, (2) he did not have possession of the go-kart, and (3) he did not complete the purchase of the go-kart until a week after the accident. See exhibit E, pp. 4-7 attached to docket no. 58. Also, Mr. Cullen argues that his attorney sent a letter to Plaintiff on December 3, 2012. In this letter Mr. Cullen further laid out facts concerning the ownership of the go-kart. Counsel informed Plaintiff in this letter that (1) Mr. Cullen had not completed a purchase of the go-kart at the time of the accident, (2) he had only made a partial payment towards the purchase price, (3) IMI Motorsports was still modifying the go-kart to meet the requirements for the purchase, (4) Mr. Cullen did not have the right

       to remove the go-kart from the track, and (5) the go-kart remained in the physical possession of IMI Motorsports (the owner of the go-kart). See exhibit F attached to docket no. 58. In a letter dated December 5, 2012, Plaintiff acknowledged that Defendant Cullen provided the details supporting his position that he did not own the go-kart at the time of accident involving Susan Thompson. See exhibit H attached to docket no. 58; and

9. That Defendant Cullen has presented sufficient evidence in the subject motion (docket no. 58) to meet the standard for a counterclaim for exemplary damages against the Plaintiff as outlined above.

**ORDER**

**WHEREFORE**, based upon these findings of fact and conclusions of law this court **ORDERS**:

1. That Defendant Raymond Cullen's Motion for Leave to Amend Counterclaim to Add Exemplary Damages (docket no. 58) is **GRANTED**;
2. That Defendant Raymond Cullen's Answer and Amended Counterclaims and Jury Demand (docket no. 58-9) is accepted for filing as of the date of this Order; and
3. That each party shall pay their own attorney fees and costs for this motion.

Done this 12th day of August 2014.

BY THE COURT

s/Michael J. Watanabe
MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE